**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| Pinnacle Bank,  )<br>  )<br>          Plaintiff,  )<br>  )<br>v.  )<br>  )<br>Tradesman Brewing Co., Inc., *et al*,  )<br>  )<br>          Defendants.  )<br>_____ ) | C/A No. 2:20-837-RMG<br><br><br><br>**ORDER AND OPINION** |

Before the Court is Plaintiff Pinnacle Bank's motion to dismiss Defendants Tradesman Brewing Co., Inc., Christopher N. Winn, Karen K. Warley a/k/a Karen K. Winn, B. Scott McConnell, Jr. a/k/a Bonny Scott McConnell, Jr. and Sara Gayle McConnell's counterclaims (Dkt. No. 48). For the reasons set forth below, the Court grants in part and denies in part Plaintiff's motion.

**I.    Background**

This is an action for foreclosure of real estate mortgages and claim and delivery, pursuant to Section 7(a) of the Small Business Act of 1953, as amended. *See* 15 U.S.C. 631, *et. seq.*; 13 C.F.R. 120, *et. seq.*

Plaintiff Pinnacle Bank (the "Bank") alleges that on or about December 5, 2017, Defendant Tradesman Brewing Co., Inc. ("Borrower") "made, executed and delivered unto" the Bank a certain note wherein Borrower, *inter alia*, promised to pay the Bank, in monthly installments, the principal sum of eight hundred forty thousand dollars ($840,000.00). (Dkt. No. 1 ¶ 15). Said note was modified/renewed by modification agreements dated September 27, 2018, January 25, 2019,

1

and September 5, 2019. (*Id.*) (collectively the "Note").[1] The maturity date of the Note is November 5, 2028. The December 5, 2017 loan document is signed by Borrower, while the referenced modifications are signed by both the Bank and Borrower. No other entities or individuals signed the Note.

The December 4, 2017 loan document states, in pertinent part, that "Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this note." (Dkt. No. 1-2 at 5). The modification agreements to the Note all contain, in pertinent part, the following clause:

> Borrowers and Guarantors hereby remise, release, and forever discharge Pinnacle Bank, its parent and affiliated companies, and all of its and their respective officers, directors, employees, agents, attorneys, and stockholders, of and from any and all manner of actions, causes and causes of actions whatsoever, at law or in equity, and including, but not limited to, all claims relating to the Loan Documents, the Guarantees, and the relationships, and activities of the Borrowers and Guarantors, and Pinnacle Bank with respect to this Agreement and the Loan Documents and Guarantees from the beginning of t[ime] to the date this Agreement is signed by the last party executing this Agreement.

(Dkt. No. 1-3 at 3); (Dkt. No. 1-4 at 2-3); (Dkt. No. 1-5 at 3).

---

[1] Attached to the Bank's complaint are the December 15, 2017 loan document, (Dkt. No. 1-2), and all referenced modifications. *See* (Dkt. No. 1-3) (the September 27, 2018 modification); (Dkt. No. 1-4) (the January 25, 2019 modification); (Dkt. No. 1-5) (the September 5, 2019 modification). To be precise, the "September 5, 2019" modification was signed on December 28, 2019, with an effective date of September 5, 2019. (Dkt. No. 1-5 at 1, 4).

In order to secure the payment of the Note, Defendants Christopher N. Winn and Karen K. Warley a/k/a Karen K. Winn, made, executed and delivered unto the Bank a mortgage for certain property. (Dkt. No. 1 ¶ 16); (Dkt. No. 1-6) (copy of said mortgage). Defendants B. Scott McConnell, Jr. a/k/a Bonny Scott McConnell, Jr. and Sarah Gayle McConnell also made, executed, and delivered unto the Bank a mortgage for certain property. (*Id.* ¶ 17); (Dkt. No. 1-7) (copy of said mortgage). Said individuals (collectively the "Guarantors") personally guaranteed payment of the indebtedness of Borrower to the Bank by Unconditional Guarantees dated December 5, 2017.[2] All the referenced guarantees contain the following language: "Guarantor waives defenses based upon any claim that: . . . Lender made errors or omissions in Loan Documents or administration of the Loan . . . [or] Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents." (Dkt. No. 1-8 at 3); (Dkt. No. 1-9 at 3-4); (Dkt. No. 1-10 at 2-3); (Dkt. No. 1-11 at 2-3). All the referenced guarantees also contain the following clause: "ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written Term of the Note or this Guarantee, or to raise a defense to this Guarantee." (Dkt. No. 1-8 at 4); (Dkt. No. 1-9 at 4); (Dkt. No. 1-10 at 4); (Dkt. No. 1-11 at 4).

On February 25, 2020, the Bank filed the instant foreclosure action against Borrower and the Guarantors (collectively the "Tradesman Defendants") alleging Borrower is in breach of the conditions of the Note.

On May 8, 2020, the Tradesman Defendants filed their answer, affirmative defenses, and counterclaims to the verified complaint. (Dkt. No. 38) (the "Answer"). The Tradesman Defendants bring counterclaims against the Bank for: (1) fraud and constructive fraud; (2) negligent

---

[2] All referenced guarantees are attached to the Bank's complaint. *See* (Dkt. No. 1-8) (Christopher N. Winn guarantee); (Dkt. No. 1-9) (Karen K. Winn guarantee); (Dkt. No. 1-10) (Bonny Scott McConnell, Jr. guarantee); (Dkt. No. 1-11) (Sara Gayle McConnell guarantee).

3

misrepresentation; (3) breach of the Note; (4) negligence; (5) promissory estoppel; and (6) violation of South Carolina Unfair Trade Practices Act ("SCUTPA").

To support their counterclaims, the Tradesman Defendants allege that "as early as 2017, [the Bank] began interfering with Tradesman Defendant[s'] ability to make payments on the loan, including—but not limited to—the actions of its third-party representative who delayed construction of Tradesman's premise by failing to disburse the loan proceeds in a timely manner." (*Id.* ¶ 34). The Tradesman Defendants continue that "beginning in March or April of 2019, [the Bank] began improperly booking and applying payments made by Tradesman Defendants and billing and demanding loan payment amounts in excess of those required under the Loan Documents." (*Id.* ¶ 35). The Tradesman Defendants allege that on "September 6, 2019, [Borrower] inquired whether there would be a modification of the loan affecting the payment that was due September 5, 2019, considering the mandatory evacuation in effect on that date." (*Id.* ¶ 37). In response, the Bank allegedly "induced Tradesman Defendants to consider a modification which it represented would decrease [Borrower's] payments," "represent[ing] that [the] loan modification would be processed quickly." *See* (*Id.* ¶ 38).

According to the Tradesman Defendants, in October 2019, the Bank's representative Bills Kerns met with the Tradesman Defendants to discuss Borrower's "financial condition." (*Id.* ¶ 41). Kerns allegedly represented that the loan modification which Borrower requested "would not take long." (*Id.* ¶ 42). And "[w]hen [Borrower] inquired as to what payments it should make pending the modification, Mr. Kerns advised [Borrower] to not make any payments because it would 'muddy the waters.' Relying on that instruction from [the Bank's] representative, [Borrower] did not make any further payments and waited for the modification to be booked." (*Id.*). The Tradesman Defendants then allege that the Bank did "not request approval for the modification

until November 5, 2019" and that Kerns forwarded the proposed loan modifications to Borrower only on December 3, 2019. (*Id.* ¶¶ 43-44). In his December 3, 2019 email to the Tradesman Defendants, Kerns allegedly "demanded that within three days, [Borrower] make a lump sum of the interest that purportedly accumulated while Plaintiff failed to process the loan modification." (*Id.* ¶ 45). Finally, on December 23, 2019, Kerns indicated to the Tradesman Defendants the modification was booked and that "he and the SBA were awaiting the additional lump sum payment before the end of the month." (*Id.* ¶ 48). The Tradesman Defendants conclude that after informing Kerns that Borrower could not pay the lump sum payment, (*Id.* ¶ 49), the Bank, "without providing any notice," filed the instant foreclosure action, (*id.* ¶ 53).

On May 28, 2020, the Bank filed a motion to dismiss the Tradesman Defendants' counterclaims pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 48). The Tradesman Defendants filed a response in opposition on June 11, 2020, (Dkt. No. 49), to which the Bank has filed a reply, (Dkt. No. 50).

## II.     Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses. . . . Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citations omitted). In a Rule 12(b)(6) motion, the Court is obligated to "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship.*, 213 F.3d 175, 180 (4th Cir.

2000). However, while the Court must accept the facts in a light most favorable to the non-moving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In general, courts do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The purpose of the rule is to ensure that defendants are "given adequate notice of the nature of a claim" made against them. *Twombly*, 550 U.S. at 555–56 (2007). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 148 (4th Cir. 2014). However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of

the complaint.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman*).

### III.    Discussion

The Bank argues that Tradesman Defendant's claims for (1) fraud; (2) negligence; and (3) negligent misrepresentation should all be dismissed because these claims are based in tort, and the relationship between the Bank and the Tradesman Defendants is strictly contractual. The Court agrees.[3]

"It is well-settled that if a tort arises out of a contract there must also exist a relationship, irrespective of the contract, that gives rise to a duty" before said tort claim is actionable. *Troutman v. Facetglas, Inc.*, 281 S.C. 598, 601, 316 S.E.2d 424, 426 (Ct. App. 1984). "A mere breach of contract is not actionable as a tort in South Carolina, no matter what the intent of the breaching party was." *Id.*; *Anthony v. Atl. Group, Inc.*, 909 F. Supp. 2d 455, 473 n. 22 (D.S.C. 2012) ("A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie."). Here, the entirety of the Tradesman Defendants' allegations against the Bank are based upon the Bank's management and administration of the Note and its Guarantees. (Dkt. No. 38 ¶¶ 33-55); *see also* (¶ 100 *et seq.*)

---

[3] In its motion, the Bank also argues that the releases contained with the Note and the Guarantees, described *supra*, bar the entirety of the Tradesman Defendants' counterclaims. As the Tradesman Defendants arguably present facts which show they may have signed the September 5, 2019 modification as a result of fraudulent statements on the part of the Bank, the Court declines to apply the release or otherwise rule on its validity at this moment. *See Alexander v. UIP Prop. Mgmt.*, No. CIV.A. DKC 14-2469, 2015 WL 1472004, at *3 (D. Md. Mar. 30, 2015) ("An affirmative defense, such as release, is not ordinarily considered on a motion to dismiss because the plaintiff is not required to negate it in the complaint."); *Id.* (declining to apply a release on a motion to dismiss and noting that "even if the elements of the defense appear on the face of the complaint, or in properly considered documents, the movant must also show that any rejoinder to the affirmative defense is foreclosed by the allegations in the complaint").

(alleging the Bank breached the terms of the Note). As the Tradesman Defendants nowhere allege the existence of a relationship with the Bank that is anything but contractual, the Tradesman Defendants' claims for fraud, negligence, and negligent misrepresentation are dismissed.

The Tradesman Defendants' SCUTPA claim is also insufficiently pled. §§ 39-5-10 *et seq*. To state a SCUTPA claim, a party must sufficiently allege "(1) that the defendant engaged in an unlawful trade practice, (2) that the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice, and (3) that the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest." *Ameristone Tile, LLC v. Ceramic Consulting Corp., Inc.*, 966 F. Supp. 2d 604, 621 (D.S.C. 2013). Under South Carolina law, "unfair or deceptive acts have an adverse impact upon the [public] if those acts have the potential for repetition." *Id.* "Potential for repetition can be demonstrated by either 'showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence' or 'showing the company's procedures created a potential for repetition of the unfair and deceptive acts.' " *Id.* (citing *Bessinger v. Food Lion, Inc.*, 305 F.Supp.2d 574, 581 (D.S.C. 2003)). Conduct, however, "'that affects only the parties to the transaction and not the public interest provides no basis for a SCUTPA claim.'" *Id.*

Here, even viewing the facts in a light most favorable to them, the Tradesman Defendants plead no facts showing the Bank acted similarly in the past nor do the Tradesman Defendants plead nonconclusory facts showing the Bank's actions were the result of "specific procedures or business practices that create the potential for repetition." *Machinery Solutions, Inc. v. Doosan Corp.*, No. 3:15-cv-03447, 2016 WL 2756429, at *3 (D.S.C. May 12, 2016) (dismissing SCUTPA claim noting that "[a]bsent specific facts, a plaintiff is merely offering a speculative claim about adverse public impact"). The Tradesman Defendants' SCUTPA claim is therefore dismissed. *See*

*Companion Prop. & Cas. Ins. Co. v. U.S. Bank Nat'l Ass'n*, No. 3:15-cv-01300-JMC, 2015 WL 7568613, at *9 (D.S.C. Nov. 24, 2015) ("The fact that an alleged misconduct occurred is not sufficient to establish that the misconduct amounts to a procedure or business practice.").

IV.     **Conclusion**

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiff Pinnacle Bank's motion to dismiss. (Dkt. No. 48). Pinnacle Bank's motion is granted to the extent that the Defendants Tradesman Brewing Co., Inc., Christopher N. Winn, Karen K. Warley a/k/a Karen K. Winn, B. Scott McConnell, Jr. a/k/a Bonny Scott McConnell, Jr. and Sara Gayle McConnell's counterclaims for (1) fraud; (2) negligence; (3) negligent misrepresentation; and (4) violation of SCUTPA are **DISMISSED.** Pinnacle Bank's motion is otherwise **DENIED.**

AND IT IS SO ORDERED.

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Court Judge

August 31, 2020
Charleston, South Carolina

9